UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SHERRY ANN MCGANN,<br><br>Debtor. | Bankruptcy Case No. 20-18118 TBM<br>Chapter 7 |
| SHERRY ANN MCGANN,<br><br>Plaintiff,<br><br>v.<br><br>JEANNE Y. JAGOW,<br>LIBERTY MUTUAL INSURANCE COMPANY, and<br>DAVID M. MILLER,<br><br>Defendants. | Adv. Pro. No. 24-1179 TBM |

**ORDER DENYING ENTRY OF DEFAULT AND ENTRY OF DEFAULT JUDGMENT AGAINST LIBERTY MUTUAL INSURANCE COMPANY**

I.   **Introduction.**

Sherry Ann McGann (the "Debtor") filed a Chapter 7 liquidation case on December 20, 2020. Displeased with the liquidation process, many years later (on August 6, 2024), she initiated this Adversary Proceeding, *McGann v. Jagow et al. (In re McGann)*, Adv. Pro. No. 24-1179 (Bankr. D. Colo.) (the "Adversary Proceeding"), against: Chapter 7 Trustee Jeanne Y. Jagow (the "Trustee"); David M. Miller, the Trustee's legal counsel, (the "Trustee's Counsel"); and Liberty Mutual Insurance Company, the Trustee's purported bonding company ("Liberty Mutual") (together, the "Defendants"). The Debtor filed an "Amended Complaint" wherein the Debtor (as Plaintiff) asserted all manner of alleged malfeasance against the Defendants.

The Trustee and the Trustee's Counsel filed a Motion to Dismiss requesting dismissal of all the claims against them. The Debtor did not timely respond. So, on October 23, 2024, the Court granted the Motion to Dismiss and dismissed all claims against the Trustee and Trustee's Counsel. Such Order was not directed to the Debtor's claims against Liberty Mutual. Thereafter, the Debtor commenced extensive

1

post-dismissal litigation in an effort to have the Court reconsider and vacate the dismissal of the claims against the Trustee and the Trustee's Counsel. The Court declined.

Meanwhile, the Debtor failed to timely prosecute her remaining claims against Liberty Mutual. The Court issued an Order to Show Cause why such claims against Liberty Mutual should not be dismissed. The Debtor responded. She asserted that she had properly served Liberty Mutual with legal process and requested that the Court enter "default judgment" against Liberty Mutual (which has never responded to the Amended Complaint). The Court denies the Debtor's request for entry of default and default judgment against Liberty Mutual because the Debtor failed to establish that Liberty Mutual was properly served with legal process.

## II.    Jurisdiction and Venue.

The Court generally has jurisdiction over the matters raised in this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and (e) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) which governs "matters concerning the administration of the estate." Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.    Procedural Background.

### A.    The Debtor's Chapter 7 Bankruptcy Case.

Four and a half years ago, the Debtor voluntarily filed for protection under Chapter 7 of the Bankruptcy Code[1] in the case captioned: *In re McGann*, Case No. 20-18118 (Bankr. D. Colo.) (the "Chapter 7 Case"). A Chapter 7 Trustee was appointed: Jeanne Y. Jagow. Over the ensuing years, the Debtor has been engaged in extensive litigation concerning the Debtor's bankruptcy liquidation in this Court, the United States District Court for the District of Colorado, the Bankruptcy Appellate Panel for the Tenth Circuit, the United States Court of Appeals for the Tenth Circuit, and the United States Supreme Court. The extent of disputed issues — in what would otherwise seem to qualify as a rather standard Chapter 7 liquidation — has been quite remarkable. For years, the Debtor sought to impede and prevent the Trustee from selling the bankruptcy estate's principal asset: the real property and improvements located at 1535 Grand Avenue, Grand Lake, Colorado (the "Grand Lake Property"). Throughout the course of the Chapter 7 Case, the Debtor asserted repeatedly that the Trustee's efforts to sell the Grand Lake Property, the Trustee's purported failure to pursue the collection of other assets that the Debtor believed the Trustee should pursue, and the Trustee's alleged refusal to accept the Debtor's offers to "settle" disputes related to sale of the Grand Lake Property by allowing her to refinance the Grand Lake Property and pay only her preferred creditors, amounted to professional negligence and misconduct. However, eventually, after great time and effort, the Trustee (with the Court's approval)

---

[1]    All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*. Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

2

successfully sold the Grand Lake Property for the benefit of the bankruptcy estate. That might have been the beginning of the end of the Chapter 7 liquidation.

**B.    The Adversary Proceeding.**

    **1.    The Amended Complaint.**

But, just before the sale of the Grand Lake Property (in another apparent effort to block the sale and insert herself into the administration of the bankruptcy estate), the Debtor acting *pro se*, initiated this Adversary Proceeding against: the Trustee; the Trustee's counsel; and Liberty Mutual. The Debtor filed an "Amended Complaint,"[2] wherein the Debtor (as Plaintiff) asserted all manner of alleged malfeasance against the Trustee and Trustee's Counsel. The Amended Complaint asserts claims for: (1) "breach of fiduciary duty by the Trustee"; (2) "negligence" by the Trustee; (3) "unauthorized practice of law by Mr. Miller"; (4) "intentional infliction of emotional distress" by the Trustee; (5) "invasion of privacy" by the Trustee; and (6) "extortion" by the Trustee. Notably, none of the specific claims set forth in the Amended Complaint appear directed to Liberty Mutual; except that the Debtor asked for "damages as per the bond terms."[3]

    **2.    Dismissal of the Trustee and Trustee's Counsel.**

After some initial skirmishes, the Trustee filed a "Motion to Dismiss with Prejudice" (the "Motion to Dismiss").[4] The Trustee's Counsel joined in the Motion to Dismiss.[5] (Liberty Mutual did not participate.) The Debtor failed to timely respond to the Motion to Dismiss. So, a few days after the passage of the response deadline, the Court — on an uncontested basis — entered its "Order Dismissing Claims against Jeanne Jagow and David Miller" (the "Dismissal Order"),[6] dismissing all claims against the Trustee and Trustee's Counsel with prejudice as requested.

The Debtor promptly sought to have the Dismissal Order "set aside." She filed an "Amended Motion Requesting (I) Set Aside of Dismissal of Plaintiff's Complaint; (II) Leave to Amend Complaint; (III) Demand for Jury Trial; and (IV) Hearing on this Motion" (the "Amended Set Aside Motion").[7] The Debtor, acting *pro* se, asserted that the Dismissal Order should be vacated because one of her former attorneys, Roger K. Adams, engaged in "excusable neglect" in not responding to the Motion to Dismiss. She argued: "[t]he [m]issed [d]eadline [w]as [d]ue to [a]ttorney [n]eglect . . ."; "[d]espite

---

[2]    Docket No. 2. The Court uses the convention "Docket No. ____" to refer to documents filed in the CM/ECF system in this Adversary Proceeding: *McGann v. Jagow et al. (In re McGann)*, Adv. Pro. No. 24-1179 (Bankr. D. Colo.). The Court uses the convention "Main Case Docket No." to refer to documents filed in the Debtor's main bankruptcy case: *In re Sherry Ann McGann*, Bankruptcy Case No. 20-18118. Here, though the Debtor titled the document "Amended Complaint," the Complaint was the first pleading filed by the Debtor and did not amend an earlier-filed document.
[3]    *Id.* at 6.
[4]    Docket No. 17.
[5]    Docket Nos. 18 and 20.
[6]    Docket No. 21.
[7]    Docket No. 27.

3

numerous attempts to contact Mr. Adams who was alerted to the urgency of the matter, including in-person meetings and emails, Mr. Adams failed to file the required response . . . ."; and "Plaintiff's failure to respond [to the Motion to Dismiss] was entirely due to Mr. Adams' failure to file, not Plaintiff's own actions . . . ."[8] In the Amended Set Aside Motion, the Debtor identified no grounds for "excusable neglect" other than blaming her legal counsel for failing to respond to the Motion to Dismiss. After a trial on the issues, the Court denied the Amended Set Aside Motion and, on June 23, 2025, issued its "Order on Motion to Set Aside Dismissal of Adversary Complaint, for Leave to Amend Complaint, and for Jury Trial" (the "Order Denying Reconsideration of Dismissal Order").[9]

Per Fed. Bankr. P. 8002(a)(1), the 14-day deadline for the Debtor to appeal the Order Denying Reconsideration of Dismissal Order expired on July 7, 2025 (assuming the finality of such Order).[10] The Debtor did not timely appeal. Instead, 21 days after the appellate deadline expired, on July 28, 2025, the Debtor filed "Plaintiff's Motion to Extend Time to File Notice of Appeal from Order Denying Motion to Set Aside Dismissal (Doc. # 67 & # 68)" (the "Motion to Extend Appellate Deadline"),[11] asserting various reasons why the Debtor failed to file a notice of appeal of the Order Denying Reconsideration of Dismissal Order within the 14-day deadline set forth in Fed. R. Bankr. P. 8002(a). After carefully considering the issues, on August 15, 2025, the Court entered its "Order Denying Motion to Extend Time to File Notice of Appeal" (the "Order Denying Extension of Appeal Deadline").[12] As the title of the Order Denying Extension of Appeal Deadline suggests, the Court determined that the Debtor failed to show excusable neglect warranting an after-the-fact extension of time for filing an appeal of the Order Denying Reconsideration of Dismissal Order under Fed. R. Bankr. P. 8002(d)(1)(B). The Debtor disagreed. So, on August 25, 2025, she filed a "Motion to Alter or Amend Findings and Correct Record Pursuant to Fed. R. Bankr. P. 9023 and 7052" (the "Motion to Alter/Amend/Correct").[13] In the Motion to Alter/Amend/Correct, the Debtor moved the Court to reconsider and vacate the Order Denying Extension of Appeal Deadline. After further briefing, on October 1, 2025, the Court entered its "Order Denying Motion to Alter or Amend Findings and Correct the Record Pursuant to Fed. R. Bankr. P. 9023 and 7052" (the "Order Denying Motion to Alter/Amend/Correct")[14] leaving in place the Order Denying Extension of Appeal Deadline. The Debtor disagreed. So, on October 2, 2025, the Debtor appealed the Order Denying Motion to Alter/Amend/Correct to the United States District Court for the District of Colorado.[15]

---

[8]   Docket No. 27 at 7.
[9]   Docket No. 67.
[10]  The Court makes no definitive determination whether the Order Denying Reconsideration of Dismissal Order was final or interlocutory. *See* Fed. R. Bankr. P. 54(a) and (b). Such issue may affect the Plaintiff's ability to appeal and the timing thereof. Nevertheless, the Plaintiff appears to contend that the Order Denying Reconsideration of Dismissal Order was final and appealable with an appellate deadline of July 7, 2025.
[11]  Docket No. 77.
[12]  Docket No. 80.
[13]  Docket No. 84.
[14]  Docket No. 97.
[15]  Docket No. 98.

But, at this stage, the Trustee and Trustee's Counsel have been dismissed from this Adversary Proceeding.

### 3. Status of Claims Against Liberty Mutual.

**All of which brings us to the current issue.** Given that the Court already dismissed the Trustee and the Trustee's Counsel as Defendants, the Court issued an "Order to Show Cause" (the "Order to Show Cause")[16] directed to whether this Adversary Proceeding could proceed as against Liberty Mutual. In the Order to Show Cause, the Court stated:

> In the introduction to the Complaint, the Plaintiff stated:
>
>> This is an adversary proceeding brought pursuant to Fed. R. Civ. P. 7001 to recover damages against the Trustee's bond provided by Liberty Mutual Insurance Company for misconduct and mismanagement by the Trustee, Jeanne Y. Jagow.
>
> (Compl. ¶ 1.) In the Complaint, the Plaintiff asserted that the Trustee had "consistently failed to perform her fiduciary duties resulting in significant financial losses and emotional distress to the Plaintiff." She asserted six "claims for relief" in the Complaint, including: "Breach of Fiduciary Duty by the Trustee"; "Negligence [by the Trustee]"; "Unauthorized Practice of Law by Mr. Miller [Trustee's Counsel]"; "Intentional Infliction of Emotional Distress [by the Trustee]"; "Invasion of Privacy [by the Trustee]"; and "Extortion [by the Trustee]." None of the claims for relief asserted by the Plaintiff appear to be directed to the Bonding Company [Liberty Mutual].
>
> On September 5, 2024, the Court issued Summonses to the Defendants (Docket No. 5). That same day, the Plaintiff filed "Plaintiff's Notice of Service and Request for Continuance" (Docket No. 7) wherein, among other things, the Plaintiff stated: "The Summons and Complaint in this adversary proceeding have been served on the Trustee and Mr. Miller via certified mail. Proof of service is attached as **Exhibit A**." Exhibit A was a FedEx receipt showing 2-day delivery via

---

<sup>16</sup> Docket No. 75.

FedEx to the Trustee and Mr. Miller.  The receipt also showed delivery as follows:

```
FedEx 2Day
Tracking Number:
    279166621088      0.15 lb (S)         9.75
        Declared Value    100
Recipient Address:
    Nina M. Durante
    Claims
    1001 4th ave
    Seattle, WA 98154
    0000000000

Scheduled Delivery Date 9/9/2024

Pricing option:
    ONE RATE

Package Information:
    FedEx Envelope
```

The Court assumes, but does not know, that this portion of the receipt was offered to show service upon the Bonding Company [Liberty Mutual].

On October 7, 2024, the Trustee filed "Jeanne Y. Jagow's Motion to Dismiss with Prejudice Plaintiff's Amended [Bankr. ECF No. 490 Complaint for Damages Against Trustee's Bond" (Docket No. 17, the "Motion to Dismiss") in which she moved for dismissal of all claims in the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  The next day, October 8, 2024, Mr. Miller filed a Joinder (Docket No. 20, the "Joinder") in which he joined in the Motion to Dismiss and requested dismissal of the Adversary Proceeding with prejudice.

On October 23, 2024, the Court dismissed all claims against the Trustee and Trustee's Counsel.  (Docket No. 21.)  On November 12, 2024, the Plaintiff filed an "Amended Motion Requesting (I) Set Aside of Dismissal of Plaintiff's Complaint; (II) Leave to Amend Complaint; (III) Demand for Jury Trial; and (IV) Hearing on this Motion" (Docket No. 27, the "Amended Set Aside Motion").  For the reasons set forth in the "Order on Motion to Set Aside Dismissal of Adversary Complaint, for Leave to Amend Complaint, and for Jury Trial" (Docket No. 67), the Court on June 23, 2025, denied the

6

Plaintiff's request to set aside the order dismissing the claims against the Trustee and Trustee's Counsel.

While the litigation related to the Amended Set Aside Motion was pending, the Plaintiff took no action to prosecute her claims against the Bonding Company [Liberty Mutual], such as filing a motion for entry of default or motion for entry of default judgment against the Bonding Company [Liberty Mutual] pursuant to Fed. R. Bankr. P. 7055 and L.B.R. 7055-1. As such, the claims against the Bonding Company [Liberty Mutual] remain pending. Therefore, and in order to ensure that the case against the Bonding Company [Liberty Mutual] moves forward or is dismissed, as appropriate, the Court hereby

ORDERS that on or before **August 4, 2025**, the Plaintiff shall take appropriate action to prosecute its claims against the Bonding Company [Liberty Mutual] or shall file a response showing cause in writing why the claims against the Bonding Company should not be dismissed, **failing which the Court will enter an order dismissing such claims without further notice to the Plaintiff**.[17]

The Debtor timely responded and submitted "Plaintiff's Response to Order to Show Cause (Doc. #75) — Claim Against Bond — Declaratory Relief" (the "OSC Response").[18] The Debtor also filed a Certificate of Service showing that the OSC Response was sent by mail to "Liberty Mutual Insurance Company c/o Nina M. Durante, Claims Representative, 1001 4th Avenue, Seattle, WA 98154." The Debtor argued that service of legal process on Liberty Mutual was proper and stated:

> 5. On September 13, 2024, Plaintiff served Liberty Mutual Insurance Company via FedEx 2-day delivery addressed to its claim representative, Nina M. Durante, at its Seattle office. Id. (p.2 dkt. #75.)
>
> 6. The package was signed for at 11:52 by S. Kniper. A copy of the signed FedEx delivery receipt is attached to the accompanying Declaration of Service as (Exhibit A).
>
> 7. The service satisfies the requirements of Fed. R. Bankr. P. 7004(b)(3) for service upon a corporate entity.[19]

---

[17] Docket No. 75 (footnotes omitted).
[18] Docket No. 79.
[19] *Id*. at 2 (bolding omitted).

Based on the foregoing, the Debtor asked for the Court to "enter default judgment pursuant to Fed. R. Bankr. P. 7055 and Fed. R. Civ. P. 55(b)."[20] Similarly, in other passages of the OSC Response, the Debtor also stated:

- "Liberty Mutual's failure to respond warrants entry of default judgment";

- "Liberty Mutual's failure to respond to the Amended Complaint — despite clear allegations of misconduct within the Trustee's fiduciary scope under 11 U.S.C. § 704 — permits the Court to enter default judgment now . . . especially where the surety has not appeared to defend."

- "To dismiss Liberty Mutual at this stage — despite their default and before resolution of the Plaintiff's ongoing appellate efforts — would irreparably prejudice Plaintiff's bond rights. Entry of default judgment is procedurally authorized under Fed. R. Bankr. P. 7055 and supported by case law holding that surety liability may attach upon well-pleaded allegations where the surety fails to respond. *In re Smith*, 582 B.R. 1, 10 (Bankr. D.D.C. 2018).[21] Plaintiff therefore respectfully urges the Court to discharge the OSC and enter default judgment against Liberty Mutual without further delay."[22]

**Although the Debtor did not seem to distinguish between the entry of default and the entry of default judgment in the OSC Response, the OSC Response is best read, liberally, as both a motion for the entry of default and a motion for default judgment against Liberty Mutual.**

### 4. Other Subsequent Events.

The same day that the Debtor filed her OSC Response (July 28, 2025), the Debtor also filed an "Amended Claim Against Bond — Declaratory Relief" (the "Amended Claim").[23] In the body of the Amended Claim, the Debtor stated that "she amends her Complaint solely as to the remaining defendant, Liberty Mutual Insurance Company."[24] The Debtor purported in the Amended Claim to state a declaratory relief claim against Liberty Mutual and asked that the Court "enter judgment against Liberty Mutual Insurance Company for damages caused by Trustee Jeanne Y. Jagow's misconduct, in the amount of $6.3 million . . . [and] [d]eclare that Liberty Mutual remains liable under the Trustee's bond pursuant to 11 U.S.C. § 322 and Fed. R. Bankr. P. 9025 . . . ."[25] In any event, the Amended Claim contains a Certificate of Service showing that it was sent by "FedEx" to "Liberty Mutual Insurance Company c/o Nina M. Durante,

---

[20] *Id*.
[21] *In re Smith*, 582 B.R. 1, 10 (Bankr. D.D.C. 2018) is fake case cited by the Debtor repeatedly over the last several years. It does not exist. The case at that citation, *In re Lockhart*, 582 B.R. 1 (Bankr. E.D. Mich. 2018) has nothing to do with the proposition advanced by the Debtor.
[22] *Id* at 3-5.
[23] Docket No. 78.
[24] *Id.* at 1.
[25] *Id.* at 4.

8

Claims Representative, 1001 4th Avenue, Seattle, WA 98154." So, perhaps, the Amended Claim is instead a Second Amended Complaint. And, the Debtor asserted that she could file the Amended Claim as of right under Fed. R. Civ. P. 15(a)(1)(B).[26]

After the Amended Claim, on August 22, 2025, the Trustee filed a "Motion to Dismiss with Prejudice Bond Surety Liberty Mutual Insurance Company" (the "Second Motion to Dismiss").[27] The Second Motion to Dismiss is quite peculiar because the Trustee (who already has been dismissed from the Adversary Proceeding), filed a request to dismiss a different party: Liberty Mutual. The Court harbors some doubts about the propriety of the already-dismissed Trustee seeking to dismiss another party.

The Debtor apparently shared the same thoughts. So, on September 2, 2025, she filed "Plaintiff's Motion to Strike Unauthorized Filing by Former Defendant, Opposition to Trustee's Intervention in Doc #83, and Request for Sanctions" (the "Motion to Strike").[28] In the Motion to Strike, the Debtor requested that the Court strike or denying the Second Motion to Dismiss filed by the Trustee. The Debtor also asserted that "Plaintiff has met all requirements under Fed. R. Civ. P. 55 and Fed. R. Bankr. P. 7055. Entry of default is now ripe."[29] In any event, after the Second Motion to Dismiss and Motion to Strike, the Debtor and the Trustee submitted a plethora of additional filings, none of which are particularly germane to the issue of Liberty Mutual's alleged default.[30]

## IV. Legal Analysis.

Although there have been many filings in this Adversary Proceeding (some of which are still pending), the Court focuses on the role of the remaining Defendant: Liberty Mutual. **The Court construes the OSC Response as both a motion for the entry or default and a motion default judgment against Liberty Mutual.**

### A. The Procedural Framework for Entry of Default and Default Judgment.

Fed. R. Civ. P. 55, which is made applicable to these proceedings by Fed. R. Bankr. P. 7055, provides, in relevant part:

---

[26] *Id.* at 1. If the Amended Claim is effectively a Second Amended Complaint, it is not certain that such pleading could be filed as of right without consent or court approval because the Trustee filed the Motion to Dismiss under Fed. R. Civ. P. 12(b) on October 7, 2024. *Compare Trujillo v. City of Newton, Kansas*, 2013 WL 535747, at *1 (D. Kan. Feb 12, 2013) (holding that 21-day period under Fed. R. Civ. P. 15(a)(1)(B) for amendment as of right is initiated as to all defendants after the first responsive pleading or Fed. R. Civ. P. 12(b) motion is filed, irrespective of later responsive pleadings or motions by other defendants); *with Nichols v. Livingston Cnty.*, 2019 WL 3935998, at *4 (W.D.N.Y. August 20, 2019) ("When a plaintiff seeks to amend his or her complaint against multiple defendants, each defendant is treated separately under Rule 15 for purposes of amending as of right."). The Court declines to decide the timeliness of the Amended Claim at this time.
[27] Docket No. 83.
[28] Docket No. 87.
[29] *Id.* at 3.
[30] *See* Docket Nos. 84-86, 88, 90-92, 94, 95, and 99.

9

(a) Entering a Default.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) Entering a Default Judgment.

(1) By the Clerk.  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk — on the plaintiff's request, with an affidavit showing the amount due — must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) By the Court.  In all other cases, the party must apply to the court for a default judgment . . . .  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) Setting Aside a Default or a Default Judgment.  The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

L.B.R. 7055-1 supplements Fed. R. Civ. P. 55 in Adversary Proceedings in this District and states, in relevant part:

(a) Clerk's Entry of Default.  A party seeking Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) must file a motion in accordance with L.B.R. 9013-1 and verify by

      affidavit or otherwise pursuant to 28 U.S.C. § 1746 the following:

      (1) the party against whom default is sought has been properly served with a complaint and summons, including the date of the issuance of the summons and the date of service of the complaint and summons;

      (2) the party against whom default is sought has failed to plead or otherwise defend within the allowed time;

      (3) the party against whom default is sought has not requested or has not been granted an extension of time to plead or otherwise defend; and

      (4) a motion for Clerk's entry of default may not be combined with a motion for entry of default judgment.

(b) Default Judgment After Entry of Default. A party seeking entry of a default judgment pursuant to Fed. R. Civ. P. 55(b) must file a motion in accordance with L.B.R. 9013-1 containing the following:

      (1) request for entry of default judgment;

      (2) affidavit, executed by an individual with personal knowledge, setting forth sufficient factual support for each element of each claim on which judgment is requested. In cases involving individuals, the supporting affidavit must allege that the defendant is not an infant or incompetent person, unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared in the action;

      (3) in cases involving individuals, the SCRA affidavit required by L.B.R. 4002-3;

      (4) if appropriate, documentary evidence to support the allegations in the affidavit (attached as exhibits);

      (5) proposed form of order approving the motion; and

      (6) proposed form of judgment.

> (c) Proof Hearing. The Court will advise the party seeking entry of default judgment of the time and date of a proof hearing, if required.
>
> (d) Service. A motion for entry of default and a motion for default judgment must be served on the party against whom relief is sought.

Chief United States District Judge Brimmer set forth a succinct summary of the default process in *State Res. Corp. v. Nature's Way Dairy LLC*, 2010 WL 4510902, at *1 (D. Colo. Nov. 2, 2010):

> In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55: first, he or she must seek an entry of default from the Clerk of the Court under Fed. R. 55(a); second, after default has been entered by the Clerk, the party must seek default judgment according to the strictures of Rule 55(b). . . . Failure to successfully complete the first step of entry of default necessarily precludes the granting of a default judgment in step two.

*Id.* (citations omitted); *see also Schmidt v. Suschinsky*, 2025 WL 50289, at *1 (D. Colo. Jan. 8, 2025) (describing two-step process starting with entry of default, followed by default judgment); *Williams v. Smithson*, 57 F.3d 1081, 2010 WL 4510902, at*1 (Table) (10th Cir. 1995) (unpublished) (same).

The Debtor did not comply with Fed. R. Civ. P. 55, Fed. R. Bankr. P. 7055, and L.B.R. 7055-1 in the OSC Response. Instead, in the OSC Response (not a separate motion), the Debtor embedded multiple requests for the entry of "default judgment" against Liberty Mutual. Notably, the Debtor did not follow the first step of the two-step process: separately submitting a motion for the entry of default under Fed. R. Civ. P. 55(a) requesting the entry of default by the Clerk. The Debtor also did not identify the date of issuance of the summons in violation of L.B.R. 7055-1(a)(1). Although the Debtor did provide an affidavit, the affidavit did not set forth sufficient factual support for each element of each claim on which judgment is requested as required by L.B.R. 7055-1(b)(2). Per L.B.R. 7055-1(b)(4), the Debtor did not submit documentary evidence to support the allegations in the affidavit. And, the Debtor did not submit a form of judgment as mandated by L.B.R. 7055-1(b)(6).

The foregoing deficiencies by the Debtor have created confusion. By not expressly asking for the entry of default by the Clerk in a separate motion under Fed. R. Civ. P. 55(a), the Debtor has seemingly excluded the Clerk from the process. (And, based on the OSC Response, the Clerk may not even realize that the Debtor presumably wants an entry of default.) However, the Court recognizes that the Debtor is proceeding *pro se* and may not have been aware of the two-step process. *State Res.*, 2010 WL 4510902, at *1. Accordingly, the Court liberally construes the OSC

Response as both a motion for the entry of default under Fed. R. Civ. P. 55(a) and a motion for the entry of default judgment under Fed. R. Civ. P. 55(b).

Whilst the first step (entry of default under Fed. R. Civ. P. 55(a)) typically is addressed by the Clerk, the Court elects to adjudicate both the Debtor's construed requests for entry of default and for default judgment because of the unique circumstances and confusion caused by the OSC Response. After all, the Court bears the ultimate responsibility to assess the propriety of the entry of default before entering default judgment. *See USA v. Welch*, 2012 WL 4097737 (D. Colo. Sept. 17, 2012) (examining propriety of entry of default by clerk upon review of motion for default judgment and striking (or, effectively, vacating) entry of default for improper service of process); *Schmidt*, 2025 WL 50289, at *4 (vacating clerk's entry of default for insufficient service of process). Put another way recently by United States District Judge Arguello:

> That Rule 55(a) "gives the clerk authority to enter a default is not a limitation on the power of the court to do so." . . . "Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of the court," a district court maintains inherent power to exercise discretion in determining whether to enter a default . . . .

*Mot. Pro, Inc. v. Vevor, Inc.*, 2023 WL 2787988, at * 3 (D. Colo. Apr. 5, 2023) (citations omitted). *See also*; *Cox v. Dodd*, 2019 WL 6496605, at *1 (D. Colo. Dec. 3, 2019) (same). The entry of default is important because, when a defendant who has been properly served with legal process fails to answer or otherwise appear in response to a complaint, the allegations, other than ones relating to the amount of damages, are deemed admitted. Fed. R. Civ. P. 8(b)(6) and Fed. R. Bankr. P. 7008. *See Burlington N.R.R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually."); *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) for proposition that defendant, by his default, admits plaintiff's well-pleaded allegations of fact); *Malibu Media, LLC v. Ling*, 80 F. Supp. 3d 1231, 1239 (D. Colo. 2015) (same, citing *Olcott* and *Jackson*); *Doe v. Hofstetter*, 2012 WL 2319052, at *2 (D. Colo. Jun. 13, 2012). Consequently, "[a]fter an entry of default, a defendant cannot defend a claim on the merits." *Malibu Media*, 80 F. Supp. 3d at 1239. *See also Hofstetter*, at *1 (same, quoting *Olcott,* 327 F.3d at 1125 n.11).

### B. The Debtor Did Not Establish that Default Should be Entered Under Fed. R. Civ. P. 55(a).

#### 1. The Requirement For Valid Service of Process Before Entry of Default.

The key issue with respect to the entry of default under Fed. R. Civ. P. 55(a) is whether the defendant was correctly served with legal process. Stated slightly differently: "Before entry of default, the Court must first determine whether Defendant was properly served." *Mot. Pro*, 2023 WL 2787988, at *3. *See also Tague v. Mind Rocket, LLC*, 2020 WL 6710576, at *2 (D. Colo. Nov. 16, 2022) (same). And, of course, it follows that the Court also cannot enter default judgment without a showing of valid legal service.

The requirement of proper legal service on the defendant implicates the Court's jurisdiction. That is because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794 (10th Cir. 2008) (reversing district court's refusal to set aside a default judgment due to ineffective service of summons and complaint); *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992) ("[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the party served.").

In this Adversary Proceeding, the Debtor asserted that she correctly served process on Liberty Mutual under Fed. R. Bankr. P. 7004(b)(3). More specifically, she stated: "This service [on Liberty Mutual] satisfies the requirements of Fed. R. Bankr. P. 7004(b)(3) for service upon a corporate entity."[31] Fed. R. Bankr. P. 7004(b)(3) provides:

> Service by Mail as an Alternative. Except as provided in subdivision (h) [relating to insured depository institutions], in addition to the methods of service authorized by Fed. R. Civ. P. 4(e)-(j), a copy of a summons and complaint may be served by first-class mail, postage prepaid, within the United States on . . . (3) a domestic or foreign corporation, or a partnership or other unincorporated association — by mailing the copy: (A) *to an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service;* and (B) also to the defendant if a statute authorizes an agent to receive service and the statute so requires.

(emphasis added). Thus, Fed. R. Bankr. P. 7004(b)(3)(A) provides for a simpler and more streamlined method of service on a corporate entity than Fed. R. Civ. P. 4(h),

---

[31] Docket No. 79 at 2.

14

which typically requires "delivering (*i.e.* a form of personal service) a copy of the summons and of the complaint "to an officer, a managing or general agent, or any agent authorized by appointment or by law to receive service . . . ."

The Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure also establish timing requirements. Per Fed. R. Bankr. P. 7004(e)(1), the summons and complaint "[i]f served my mail" "must be deposited in the mail within 7 days and the summons is issued." Thus, the requirement in L.B.R. 7055-1(a)(1) that a party seeking entry of default must identify "the date of the issuance of the summons and the date of service of the complaint and summons." And, then, service of legal process generally must be completed within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m), incorporated by Fed. R. Bankr. P. 7004(a)(1) provides:

> Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

### 2.  **The Debtor's Efforts to Serve Legal Process on Liberty Mutual.**

The Debtor failed to establish proper service of legal process on Liberty Mutual per the foregoing requirements. Factually, the record shows the following:

- The Debtor commenced this Adversary Proceeding by filing the Amended Complaint on August 6, 2024.[32]

- For several weeks, the Debtor did nothing to prosecute this Adversary Proceeding. For example, the Debtor did not request or obtain summonses to serve on the Defendants. So, the Court issued an "Order to Show Cause," why this Adversary Proceeding should not be dismissed.[33]

- In response, the Debtor requested and the Clerk issued a Summons directed to Liberty Mutual on September 5, 2024.[34]

---

[32] Docket No. 1.
[33] Docket No. 3.
[34] Docket No. 5.

15

- On September 5, 2024, the Debtor filed a "Notice of Service" (the "Notice of Service")[35] which stated that "[t]he Summons and Complaint in this adversary proceeding have been served on the Trustee and Mr. Miller via certified mail. Proof of service is attached as Exhibit A." Notably, the Notice of Service did not assert that the Debtor had served Liberty Mutual. Furthermore, the Notice of Service failed to comply with Fed. R. Civ. P. 4(l), incorporated by Fed. R. Civ. P. 7004(a)(1), which requires that "proof [of service] must be by the server's affidavit." The Notice of Service did not include an affidavit. However, appended to the Notice of Service was a form of unverified receipt (the "Receipt") as follows:

  ```
  FedEx 2Day
  Tracking Number:
     279166621088     0.15 lb (S)      9.75
        Declared Value    100
  Recipient Address:
        Nina M. Durante
        Claims
        1001 4th ave
        Seattle, WA 98154
        0000000000

  Scheduled Delivery Date 9/9/2024

  Pricing option:
        ONE RATE

  Package Information:
        FedEx Envelope
  ```

  The receipt did not reference Liberty Mutual, did not state the day the package was sent, and was for delivery by Federal Express, not by first-class U.S. mail.

- After September 5, 2024, the Debtor did nothing to prosecute her claims against Liberty Mutual. So, ten months later, on July 21, 2025, the Court issued the Order to Show Cause (reproduced above).[36] To summarize, the Court noted that there was no proof of service on Liberty Mutual in the Notice of Service and observed that the Debtor had not prosecuted her claims against Liberty Mutual in any way, including by filing a motion for entry of default or motion for entry of default judgment. The Court ordered the Debtor to show cause why her claims against Liberty Mutual should not be dismissed.

- After the Order to Show Cause, on July 28, 2025, the Debtor filed the OSC Reply.[37] The OSC Reply was presented about a year after the

---

[35] Docket Nos. 7 and 8.
[36] Docket No. 75.
[37] Docket No. 79.

16

commencement of this Adversary Proceeding. In the OSC Response, the Debtor argued that service of legal process on Liberty Mutual was proper and stated:

> 5. On September 13, 2024, Plaintiff served Liberty Mutual Insurance Company via FedEx 2-day delivery addressed to its claim representative, Nina M. Durante, at its Seattle office. Id. (p.2 dkt. #75.)
>
> 6. The package was signed for at 11:52 by S. Kniper. A copy of the signed FedEx delivery receipt is attached to the accompanying Declaration of Service as (Exhibit A).
>
> 7. The service satisfies the requirements of Fed. R. Bankr. P. 7004(b)(3) for service upon a corporate entity.[38]

Based on the foregoing, the Debtor asked for the Court to "enter default judgment pursuant to Fed. R. Bankr. P. 7055 and Fed. R. Civ. P. 55(b)."[39]

- The Debtor appended a "Declaration of Sherry Ann McGann Regarding Service of Process on Liberty Mutual Insurance Company" (the "McGann Declaration") executed on July 25, 2025 and stated:

> I, Sherry Ann McGann, declare under penalty of perjury under the laws of the United States that the following is true and correct:
>
> 1. I am the Plaintiff in this adversary proceeding.
>
> 2. On September 9, 2024, I served the Summons and Complaint in Adversary Proceeding No. 24-01179 on **Liberty Mutual Insurance Company** via FedEx 2-Day delivery addressed to:
>
> **Nina M. Durante, Claims Representative**
> 1001 4th Avenue
> Seattle, WA 98154
>
> 3. FedEx tracking confirms the delivery was completed on **September 13, 2024 at 11:52 AM**, and signed for by **S. Kniper**.(EXH A)
>
> 4. A copy of the delivery confirmation is attached hereto as Exhibit A.
>
> 5. Nina M. Durante was identified in court records as the claims representative for Liberty Mutual and is believed to be authorized to accept service on behalf of the company.
>
> 6. This declaration is provided in support of Plaintiff's Response to the Court's Order to Show Cause (Doc #75) filed concurrently herewith.

---

[38] Id. at 2 (bolding omitted). The Debtor also stated: "Liberty Mutual's failure to respond warrants entry of default judgment"; Id. at 3.
[39] Id.

17

### 3. The Debtor Did Not Establish Proper Legal Service on Liberty Mutual.

Accepting all of what the Debtor has presented, the Debtor has not shown proper legal service of process on Liberty Mutual which would allow the Court to enter default under Fed. R. Civ. P. 55(a). The Debtor relies exclusively on Fed. R. Bankr. P. 7004(b)(3), which provides, in relevant part, that service on a domestic corporation in the United States must be (by first-class mail) to: "*an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service . . . .*" But the Receipt shows that the Debtor sent a summons and the Amended Complaint in September 2024 in a package addressed to:

> Nina M. Durante
> Claims
> 1001 4th ave.
> Seattle, WA 98154

The address did not even identify Liberty Mutual and the text of the address does not show that it was to "an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service." The capacity of "Nina M. Durante" is listed vaguely as "Claims." In the OSC Response and Declaration, the Debtor added a new twist: Nina M. Duarte is a "Claim Representative." Further, the Debtor states that "she believes [Nina M. Duarte] to be authorized to accept service on behalf of [Liberty Mutual." Notably, the Debtor has not identified any factual or legal basis for her belief why an alleged "Claims Representative" is the proper person to accept legal service for Liberty Mutual.

The address for the package sent by the Debtor did not identify Nina M. Durante as an "officer" of Liberty Mutual. The term "officer" has a well-accepted meaning in the context of corporate entities. "Broadly speaking, a corporate officer is one conferred with the authority to operate and control the day-to-day operations of the business such as that held by the president, vice-president, secretary or treasurer." *Saucier v. Capitol One (In re Saucier)*, 366 B.R. 780, 784 (Bankr. N.D. Ohio). *See also* Bryan A. Garner, BLACK'S LAW DICTIONARY at 1257 (10th ed. Thompson Reuters 2014) ("In corporate law, the term [officer] refers esp. to a person elected or appointed by the board of directors to manage the daily operations of a corporation such as a CEO, president, secretary or treasurer."). The Debtor has not shown that Nina M. Durante, as a "claims representative," qualified as an "officer" of Liberty Mutual at the time of the alleged service of process. *See Saucier*, 366 B.R. at 784 ("office manager" is not an "officer"). Notably, in the OSC Response and Declaration, the Debtor does not seem to contend that Nina M. Durante is an "officer" of Liberty Mutual.

The address for the package sent by the Debtor did not identify Nina M. Durante as a "managing or general agent" of Liberty Mutual either. "It is not just any agent who qualifies as a recipient of service on behalf of a corporation. Rule 7004(b)(3) specifies that the agent must be a managing or general agent or an agent specifically designated for such purpose by appointment or by law . . . . Service on any other corporate employee is not sufficient." *In re Assoc. of Volleyball Pros.*, 256 B.R. 313, 317 (Bankr.

18

C.D. Cal. 2000). "A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004). *See also Rentas v. Autoridad de Acueductos y Alcantarillados (In re PMC Mktg. Corp.)*, 2015 WL 4594503, at *2 (Bankr. D.P.R. July 30, 2015) (same, citing *Bridgeport*). Similarly, a general manager or general agent "is often an agent of a corporation of sufficient character and rank to establish and ensure that a corporation will be apprised of the service made." *Id.* The Debtor has not shown that Nina M Durante as a "claims representative" qualified as a "managing agent" or "general agent" of Liberty Mutual at the time of the alleged service of process. *Saucier*, 366 at 784 ("office manager" is not a managing or general agent). Notably, in the OSC Response and Declaration, the Debtor does not seem to contend that Nina M. Duarte is a "managing or general agent" of Liberty Mutual.

The final category of Fed. R. Bankr. P. 7004(b)(3) service of legal process is an "agent authorized by appointment or by law to receive service." In the Declaration, the Debtor speculates that Nina A. Durante might be "authorized to accepted service." This category typically covers registered agents for service of process under State law. However, the Debtor's belief of "authorization" is untethered to any factual or legal basis. For example, the Debtor did not come forward to show that Nina A. Durante was listed as a registered agent for service of process on Liberty Mutual in either Colorado or Washington at the time of the purported service of process. Ultimately, the Debtor failed to show Nina A. Durante was "authorized" to accept service of legal process on Liberty Mutual. And, the Debtor bears the burden on the issue. *Volleyball Pros.*, 256 B.R. at 317.

Since the Debtor has not shown that she effected valid service of legal process on Liberty Mutual in September 2024, the Court has no personal jurisdiction over Liberty Mutual in this Adversary Proceeding. *Omni Cap. Int'l,* 484 U.S. 104; *Hukill,* 542 F.3d 794; *Okla. Radio Assocs.,* 969 F.2d at 943; *Schmidt,* 2025 WL 50289, at *4 ("Because Plaintiff has not shown that Mr. Suschinsky was properly served with a copy of the summons and Complaint, this Court cannot — without more — exercise personal jurisdiction over Defendant."). Therefore,, the Court must deny entry of default against Liberty Mutual. *See Cox v. Armstrong*, 2024 WL 5002617, at *3 (10th Cir. Dec. 6, 2024) ("[D]efendants were not properly served. As defendants had no duty to answer until properly served, entry of default prior to service would have been improper."); *Welch*, 2012 WL 4097737, at *2 (noting that "[t]here is nothing in the record to indicate that Ms. Nelson was a proper agent for service of process on Defendant CIT; in other words, the record is devoid of evidence demonstrating that she is an officer or an appropriate agent of Defendant CIT on whom proper service could be made" and denying sufficiency of service on Ms. Nelson, a "legal assistant" as result).

C. **The Debtor Did Not Establish that the Court Should Enter Default Judgment.**

A precondition to the entry of a default judgment is the entry of default. Since the Court has determined that the Debtor did not meet her burden to show proper service of

process on Liberty Mutual, the Court cannot enter default judgment either. *Vanderwal v. Trujillo*, 2022 WL 2512820, at *2 (D. Colo. June 15, 2022) (since default had not entered, motion for default judgment was premature and must be denied); *State Res.*, 2010 WL 4510902, at *1 ("Failure to successfully complete the first step of obtaining an entry of default necessarily precludes the granting of default judgment in step two.").

### V.   **Conclusion and Order.**

For the reasons set forth above, the Court

DENIES entry of default and entry of default judgment against Liberty Mutual and all other relief requested by the Debtor in the OSC Response.

Based upon the foregoing, the Court has determined that it likely should dismiss Liberty Mutual without prejudice pursuant to Fed. R. Civ. P. 4(m), as incorporated by Fed. R. Bankr. P. 7004(a)(1), because the Debtor has not properly effected service of process on Liberty Mutual within 90 days after the Amended Complaint was filed. However, Fed. R. Civ. P. 4(m) indicates that the Court may dismiss "on its own after notice to the plaintiff." The Court believes that the two Orders to Show Cause already issued by the Court in this Adversary Proceeding likely satisfy the notice requirement of Fed. R. Civ. P. 4(m). However, in an abundance of caution, and to protect the due process rights of the Debtor, the Court further

ORDERS that if the Debtor contests dismissal without prejudice of claims against Liberty Mutual, then, the Debtor must submit a motion, asking the Court to refrain from such dismissal without prejudice under Fed. R. Civ. P. 4(m) by no later than **November 10, 2025.** Any such motion must be supported by citation to facts, case law and rules authority.[40] In the absence of a timely response, the Court will dismiss the Debtor's claims against Liberty Mutual without prejudice promptly thereafter.

DATED this 27th day of October, 2025.

BY THE COURT:

_____
Thomas B. McNamara
United States Bankruptcy Judge

---

[40]   As per prior order of the Court, "with respect to all case law cited by the Debtor, the Debtor must: (1) provide both the full case citation and a pinpoint citation, identifying by page number, the page(s) on which the material referenced provides support for the Debtor's position in her filing; (2) provide with the filing copies of all cases cited in the filing, highlighted or underlined to show the passages in the cases which the Debtor claims support her positions." (Main Case Docket No. 752 at 3.)