UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SHERRY ANN MCGANN,<br><br>Debtor. | Bankruptcy Case No. 20-18118 TBM<br>Chapter 7 |
| SHERRY ANN MCGANN,<br><br>Plaintiff,<br><br>v.<br><br>JEANNE Y. JAGOW,<br>LIBERTY MUTUAL INSURANCE<br>COMPANY, and<br>DAVID M. MILLER,<br><br>Defendants. | Adv. Pro. No. 24-1179 TBM |

**ORDER DISMISSING LIBERTY MUTUAL INSURANCE COMPANY AND DENYING VARIOUS MOTIONS**

I. **Introduction.**

Sherry Ann McGann (the "Debtor") filed a Chapter 7 liquidation case on December 20, 2020. Displeased with the liquidation process, many years later (on August 6, 2024), she initiated this Adversary Proceeding, *McGann v. Jagow et al. (In re McGann)*, Adv. Pro. No. 24-1179 (Bankr. D. Colo.) (the "Adversary Proceeding"), against: Chapter 7 Trustee Jeanne Y. Jagow (the "Trustee"); David M. Miller, the Trustee's legal counsel, (the "Trustee's Counsel"); and Liberty Mutual Insurance Company, the Trustee's purported bonding company ("Liberty Mutual") (together, the "Defendants"). The Debtor filed an "Amended Complaint" wherein the Debtor (as Plaintiff) asserted all manner of alleged malfeasance against the Trustee and Mr. Miller.

The Trustee and the Trustee's Counsel filed a Motion to Dismiss requesting dismissal of all the claims against them. The Debtor did not timely respond. So, on October 23, 2024, the Court granted the Motion to Dismiss and dismissed all claims against the Trustee and Trustee's Counsel. Such Order was not directed to the Debtor's claims against Liberty Mutual. Thereafter, the Debtor commenced extensive

1

post-dismissal litigation in an effort to have the Court reconsider and vacate the dismissal of the claims against the Trustee and the Trustee's Counsel. The Court declined.

Meanwhile, the Debtor failed to timely prosecute her remaining claims against Liberty Mutual. The Court issued an "Order to Show Cause"[1] requiring the Debtor to take appropriate action to prosecute her claims against Liberty Mutual or to file a response showing cause in writing why her claims against Liberty Mutual should not be dismissed. In a footnote in the Order to Show Cause, the Court questioned whether the service upon Liberty Mutual had been properly effected pursuant to Fed. R. Bankr. P. 7004(b)(3) such that the Plaintiff would be entitled to entry of default pursuant to Fed. R. Bankr. P. 7055, Fed. R. Civ. P. 55(a), and L.B.R. 7055-1(a)(1).[2] The Debtor did not take action to properly effect service. Instead, she responded, contending that, in fact, she had properly served Liberty Mutual with legal process and requested that the Court enter default judgment against Liberty Mutual (which has never responded to the Amended Complaint).

On October 27, 2025, the Court issued an "Order Denying Entry of Default and Entry of Default Judgment Against Liberty Mutual Insurance Company" (the "Default Order").[3] *McGann v. Jagow et al. (In re McGann)*, 2025 WL 3028987 (Bankr. D. Colo.). In the Default Order, the Court determined that "the Debtor failed to timely prosecute her remaining claims against Liberty Mutual . . . . [and] failed to establish that Liberty Mutual was properly served with legal process."[4] Furthermore, the Court held: "Since the Debtor has not shown that she effected valid service of legal process on Liberty Mutual in September 2024, the Court has no personal jurisdiction over Liberty Mutual in this Adversary Proceeding."[5] Accordingly, the Court denied the entry of default and default judgment against Liberty Mutual under Fed, R. Civ. P. 55 and ordered:

> Based upon the foregoing, the Court has determined that it likely should dismiss Liberty Mutual without prejudice pursuant to Fed. R. Civ. P. 4(m), as incorporated by Fed. R. Bankr. P. 7004(a)(1), because the Debtor has not properly effected service of process on Liberty Mutual within 90 days after the Amended Complaint was filed. However, Fed. R. Civ. P. 4(m) indicates that the Court may dismiss "on its own after notice to the plaintiff." The Court believes that the two Orders to Show Cause already issued by the Court in this Adversary Proceeding likely satisfy the notice requirement of Fed. R. Civ. P. 4(m). However, in an abundance of caution,

---

[1] Docket No. 75. The Court uses the convention "Docket No. ____" to refer to documents filed in the CM/ECF system in this Adversary Proceeding: *McGann v. Jagow et al. (In re McGann)*, Adv. Pro. No. 24-1179 (Bankr. D. Colo.).
[2] *Id.* at 3 n.4.
[3] Docket No. 106.
[4] *Id.* at 2.
[5] *Id.* at 19.

2

and to protect the due process rights of the Debtor, the Court further

ORDERS that if the Debtor contests dismissal without prejudice of claims against Liberty Mutual, then, the Debtor must submit a motion, asking the Court to refrain from such dismissal without prejudice under Fed. R. Civ. P. 4(m) by no later than **November 10, 2025**.  Any such motion must be supported by citation to facts, case law and rules authority.  In the absence of a timely response, the Court will dismiss the Debtor's claims against Liberty Mutual without prejudice promptly thereafter.[6]

Thereafter, the Debtor submitted her "Response to Order to Show Cause (Doc. 107) Why Liberty Mutual Insurance Company Should Not Be Dismissed Under Fed. R. Civ. P. 4(m), And Alternative Request for Extension of Time to Perfect Service — If Necessary" (the "Response").[7]  Most of the Response was dedicated to the Debtor's criticisms of the Default Order.  However, the Debtor also argued that "even if service were deemed technically defective, the Court must extend time [for service] under Rule 4(m)."[8]  For the reasons set forth below, the Court concludes that the Debtor has not established good cause for an extension of time to properly complete service on Liberty Mutual.  And, the Court declines to permissively extend the time for the Debtor to properly complete service on Liberty Mutual.  Accordingly, per Fed. R. Civ. P. 4(m), as incorporated by Fed. R. Bankr. P. 7004(a)(1), the Court dismisses without prejudice all claims against Liberty Mutual in this Adversary Proceeding.  Having dismissed Liberty Mutual, the Court also denies various other recent related motions filed by the Debtor.

## II.    Jurisdiction and Venue.

The Court generally has jurisdiction over the matters raised in this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and (e) and 28 U.S.C. § 157(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) which governs "matters concerning the administration of the estate."  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.    Procedural Background.

### A.    Incorporation of Procedural Background Set Forth in Default Order.

As a matter of judicial economy and to avoid repetition, the Court incorporates by reference the entire Procedural Background set forth in the Default Order including defined terms.[9]

---

[6]    *Id.* at 20.
[7]    Docket No. 109.
[8]    *Id.* at 11.
[9]    Docket No. 106 at 2-9.

3

### B.  Claims Against Liberty Mutual.

On August 6, 2024, the Debtor initiated this Adversary Proceeding by filing an "Amended Complaint,"[10] wherein the Debtor (as Plaintiff) asserted malfeasance against the Trustee and Trustee's Counsel. In the Amended Complaint, the Debtor asserted claims for: (1) "breach of fiduciary duty by the Trustee"; (2) "negligence" by the Trustee; (3) "unauthorized practice of law by Mr. Miller"; (4) "intentional infliction of emotional distress" by the Trustee; (5) "invasion of privacy" by the Trustee; and (6) "extortion" by the Trustee. **Notably, none of the specific claims set forth in the Amended Complaint appears to be directed to Liberty Mutual; except that the Debtor asked for "damages as per the bond terms."**[11]

### IV.  Legal Analysis.

### A.  The Debtor Has Not Properly Served Legal Process on Liberty Mutual.

Through the Default Order, the Court already has determined that the Debtor's service of process on Liberty Mutual was defective. To summarize, the Debtor relied exclusively on Fed. R. Bankr. P. 7004(b)(3) in support of her argument asserting that service on Liberty Mutual was proper. Fed. R. Civ. P. 7004(b)(3) states, in relevant part, that service on a domestic corporation in the United States must be (by first-class mail) to: "*an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service . . . .*" (emphasis added).

But, per the Debtor and her Receipt (which is her only evidence of service), the Debtor only sent the Summons and the Amended Complaint in September 2024 in a package addressed to:

> Nina M. Durante
> Claims
> 1001 4th ave.
> Seattle, WA 98154

The address did not identify Liberty Mutual, and the text of the address does not show that it was to "an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service." The capacity of "Nina M. Durante" is listed vaguely as "Claims." Later, the Debtor asserted that Nina M. Durante is a "claims representative" of Liberty Mutual. However, the Debtor did not provide any factual or legal basis to show that Nina M. Durante was, at the time of the alleged service, "an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service . . . ." for Liberty Mutual.

The Court also concluded that since the Debtor has not shown that she effected valid service of legal process on Liberty Mutual in September 2024, the Court had no

---

[10]   Docket No. 2.
[11]   *Id*. at 6.

4

personal jurisdiction over Liberty Mutual in this Adversary Proceeding. *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hukill v. Okla. Native Am. Domestic Violence Coal.*, 542 F.3d 794, 797 (10th Cir. 2008); *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992). *See also Schmidt v. Suschinsky*, 2025 WL 50289, at *4 (D. Colo. Jan. 8, 2025) ("Because Plaintiff has not shown that Mr. Suschinsky was properly served with a copy of the summons and Complaint, this Court cannot — without more — exercise personal jurisdiction over Defendant."). Therefore, the Court could not enter a default against Liberty Mutual. *See Cox v. Armstrong*, 2024 WL 5002617, at *3 (10th Cir. Dec. 6, 2024) ("[D]efendants were not properly served. As defendants had no duty to answer until properly served, entry of default prior to service would have been improper."); *U.S. v. Welch*, 2012 WL 4097737, at *2 (D. Colo. Sept. 17, 2012) (noting that "[t]here is nothing in the record to indicate that Ms. Nelson was a proper agent for service of process on Defendant CIT; in other words, the record is devoid of evidence demonstrating that she is an officer or an appropriate agent of Defendant CIT on whom proper service could be made" and denying sufficiency of service on Ms. Nelson, a "legal assistant," as result).

Much of the Debtor's Response submitted after the Default Order is merely criticism of the Default Order. For example, pages 2-5 of the Response consist of a series of "corrections" which the Debtor purports to make to the Order. The Debtor has every right to disagree with the Court's Default Order. Sobeit. But submitting a series of "corrections" to the Default Order is procedurally improper and ineffective. The Court will not revisit the determinations in the Default Order.

However, in the interest of further explaining why the Debtor has not established a basis for entry of default, the Court observes that the Response and associated submission of Exhibits A-F strongly support the Court's determination that service on Liberty Mutual was improper.

For example, in the Response, the Debtor stated:

> The FedEx 2-day [Receipt] cited by the Court was <u>not</u> Movant's [Debtor's] original service of summons and complaint; it related to subsequent OSC papers. Original service of the claim/suit materials was sent March 18, 2024 by USPS certified mail with signature (Ex. B) to (i) the surety's principal office on the bond (USFIC, Morristown NJ) (Ex. G); and (ii) UST Denver and EOUST Washington (Ex. B). Liberty Mutual's Senior Surety Claims Counsel acknowledged that March 18 package in writing shortly thereafter. (Ex. B and C, p. 61).[12]

To be charitable, the Debtor's position is a complete *non sequitor*. Whilst the Debtor now claims that "[o]riginal service of the claim/suit materials was sent March 18, 2024," it is impossible that the Debtor served Liberty Mutual with the Summons and Amended

---

[12] Docket No. 109 at 3.

5

Complaint in this Adversary Proceeding on March 18, 2024, because the Debtor did not initiate this Adversary Proceeding until about five months later on August 6, 2024 by filing the Amended Complaint.[13] And, the Summons was not issued until September 5, 2024.[14] So, the Debtor demonstrably could not have served the Summons and Amended Complaint in this Adversary Proceeding on March 18, 2024.

The Exhibits referenced by the Debtor in the Response show the fallacy of the Debtor's contentions.

- Exhibit A is a letter from Patrick Layng (United States Trustee for Regions 11 and 19) to the Debtor, dated January 10, 2024. In the letter, the United States Trustee states: "Based on the information we have, summarized in part below, we do not discern [Chapter 7] trustee misconduct in seeking the turnover." Since the letter is dated about seven months before the Debtor filed the Amended Complaint, it does not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.

- Exhibit B is a series of three receipts from the United States Postal Service showing that something (the Court does not know what) was sent to three recipients on March 18, 2024. The Debtor contends that Exhibit B somehow proves "[o]riginal service of the claim/suit materials was sent March 18, 2024 by USPS certified mail with signature."[15] Obviously, the Debtor is wrong. Since the March 18, 2024 receipts predate the Amended Complaint by about five months, they do not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding. And besides, none of the three receipts is even addressed to Liberty Mutual.

- Exhibit C is a compilation of materials including: (1) an e-mail, dated March 21, 2024, from Michelle Tyrone at "Crum & Forster"; (2) a letter from the Debtor to United States Fire Insurance Company, dated March 18, 2024; (3) an "Amended Complaint for Hearing and Jury Trial" in the case captioned: *Sherry McGann v. Jeanne Jagow (Chapter 7 Trustee) and David M. Miller*, Case No. 24-CV-727 (D. Colo.), dated March 15, 2024; (4) Bond No. 612419153 titled "In the United States Bankruptcy Court for the Districts of Colorado, Utah and Wyoming Blanket Bond of Trustees in Cases Under Chapter 7 United States Code," dated November 20, 2023 and issued by United States Fire Insurance Company ("Bond No. 612419153"); and (5) a compilation of about 37 additional pages of miscellaneous letters, account statements, Linked-In printouts, e-mails, draft motions, and a postal receipt addressed to United States Fire Insurance Company covering the time period between August 22, 2021, to

---

[13]   Docket No. 2.
[14]   Docket No. 7.
[15]   Docket No. 109 at 3 (bolding in original omitted).

6

March 19, 2024.  Since the foregoing materials predate the Amended Complaint by between five months and three years, they do not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.  In fact, none of the materials mentions Liberty Mutual.

- Exhibit D is a series of e-mails, dated March 21, 2024, between lawyers or analysts from Amynta Surety Solutions and Crum & Foster.  Since the foregoing materials predate the Amended Complaint by about five months, the e-mails do not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.  In fact, none of the e-mails mentions Liberty Mutual.

- Exhibit E is a letter from Nina M. Durante (identified as Senior Surety Claims Counsel at Liberty Mutual Surety) to the Debtor, dated March 28, 2024.  The letter acknowledges that Liberty Mutual received a letter from the Debtor on March 18, 2024, making a claim on Bond No. 612419153.  The letter states:  "The bond included with your communication is bond number 612419153 issued by United States Fire Insurance Company.  United States Fire Insurance Company is neither an affiliate nor a subsidiary of Liberty Mutual Insurance Company."  Since the letter predates the Amended Complaint by about five months, the letter does not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.  At best, it shows pre-suit communications.  In any event, the letter also raises serious issues about whether Liberty Mutual Insurance Company has anything whatsoever to do with Bond No. 612419153.

- Exhibit F is a copy of Bond No. 612419153.  The Response states throughout that the Debtor is trying to sue on Bond No. 612419153.  However, Bond No. 612419153 was issued by United States Fire Insurance Company, not Liberty Mutual, which again raises issues regarding why the Debtor is attempting to sue Liberty Mutual in this Adversary Proceeding.  However, regardless, Exhibit F does not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.

- Exhibit G is an undated internet printout of an "AM Best Rating Services" assessment of United Fire Insurance Company.  Exhibit F does not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.

- Exhibit H is an undated internet printout about Crum & Forster Surety.  Exhibit H does not show that the Debtor properly served Liberty Mutual with the Summons and Amended Complaint in this Adversary Proceeding.

In summary, the new Exhibits which the Debtor has produced in the Response are mostly irrelevant (except Bond No. 612419153) and do not prove service of the Summons and Amended Complaint on Liberty Mutual. Accordingly, the Court's assessment in the Default Order that Liberty Mutual has not been properly served with legal process is valid.

**B.      An Extension of Time for Service Under Fed. R. Civ. P. 4(m) Is Unwarranted.**

Although the Court was inclined in the Default Order to dismiss Liberty Mutual because of the Debtor's failure to prove valid service of process, the Court refrained from doing so in order to ensure that the Debtor had the opportunity to request additional time to effect proper service of process under Fed. R. Civ. P. 4(m) if there existed good cause for doing so. Fed. R. Civ. P. 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In a short passage in the Response, titled "Even if Service Were Deemed Technically Defective, the Court Must Extend Time under Rule 4(m)," the Debtor argued:

> Under *Espinoza v. United States*, 52 F.3d 838 (10th Cir. 1995), dismissal under Rule 4(m) is an abuse of discretion where the plaintiff made good-faith efforts at service and the defendant had actual notice. See also *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381 (7th Cir. 1998). Movant acted diligently, followed DOJ directions, and Liberty Mutual suffered no prejudice. Equity and 11 U.S.C. § 105(a) compel extension rather than dismissal. pin cite page 842 (final paragraph and footnote 8):
>
> As the Tenth Circuit emphasized, "the complex nature of the requirements of Fed. R. Civ. P. 4(i), particularly when the plaintiff is proceeding pro se, should be a factor in the district court's consideration when it determines whether a permissive extension of time should be granted under Rule 4(m)." *Espinoza v. United States*, 52 F.3d 838, 842 (10th Cir. 1995). The court further instructed that "district courts should also take care to protect pro se plaintiffs from the consequences of confusion or delay" attending service

8

>   difficulties. Id. at n.8 (citing Fed. R. Civ. P. 4(m) advisory committee note.[16]

The foregoing is the entire sum and substance of the Debtor's request for an extension of time to serve Liberty Mutual with legal process.

To her credit, the Debtor correctly identified *Espinoza v. U.S.*, 52 F.3d 838, 842 (10th Cir. 1995), as key appellate precedent governing requests for extension of time to complete service under Fed. R. Civ. P. 4(m). The appellate court established a two-stage process:

>   [D]istrict courts should proceed under the new rule [Fed. R. Civ. P. 4(m)] in the following manner: The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry. If good cause is shown, the plaintiff is entitled to a mandatory extension of time. If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

*Espinoza*, 52 F.3d at 841. *See also Womble v. Salt Lake City Corp.*, 84 Fed. Appx. 18, at *1 (10th Cir. 2003) (table) (same); *Dahn v. U.S.*, 77 F.3d 492, at *1 (10th Cir. 1996) (table) (same).

### 1.  **The Debtor Did Not Establish Good Cause for an Extension of Time to Effect Proper Service.**

Since the Debtor did not properly serve Liberty Mutual within 90 days after the Amended Complaint was filed, the Debtor would have been able to obtain an extension of time to complete service of process if the Debtor showed good cause for her failure to properly serve Liberty Mutual. Indeed, if the Debtor had proved good cause, then an extension would be mandatory. *Espinoza*, 52 F.3d at 841.

The phrase "good cause" is not defined in Fed. R. Civ. P. 4(m). However, within the bounds of the Tenth Circuit, good cause under Fed. R. Civ. P. 4(m) is interpreted narrowly, "rejecting inadvertence or neglect as 'good cause' for untimely service." *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 174 (10th Cir. 1996). *See also Elide Fire USA Corp. v. Auto Fire Guard, LLC*, 2022 WL 672485, at *3 (D. Colo. Mar. 7, 2022) ("The Tenth Circuit has interpreted 'good cause' narrowly . . . .") (quoting *Blackmon v. U.S.D. 259 Sch. Dist.,* 769 F.Supp.2d 1267, 1275 (D. Kan. 2011)). The narrow interpretation dictates that "inadvertence or negligence alone do not constitute "good

---

[16]   Docket No. 106 at 11.

cause" for failure of timely service. Mistake of counsel or ignorance of the rules also usually do not suffice." *Kirkland*, 86 F.3d at 176; *Elide Fire*, 2022 WL 672485 at *3 (similar). As a result, "[u]nexplained assertions of miscalculation do not constitute "good cause." *Kirkland*, 86 F.3d at 176. Further, the absence of prejudice [to the defendant] alone does not constitute good cause." *Id*. See also *Despain v. Salt Lake Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) (same). And, critically, "[t]he plaintiff who seeks to rely on the good cause provision must show *meticulous efforts to comply with the rule*." *Kirkland*, 86 F.3d at 176 (emphasis added). See also *Despain*, 13 F.2d at 1438 (same).

The narrow interpretation of "good cause" is well-illustrated by *Despain*, 13 F.3d 1436. In that binding appellate decision, the Tenth Circuit determined that the plaintiffs had failed to serve the proper parties. The plaintiffs requested an extension to effect service of process. However, the Tenth Circuit concluded that good cause was not shown even though: (1) the statute of limitations had run; (2) the plaintiff's counsel had misinterpreted the applicable rule of procedure; (3) the plaintiffs contended that the defendants would not be prejudiced by an extension; and (4) the defendants may have had actual notice of the lawsuit. *Id*. See also *Espinoza*, 52 F.3d at 841 (characterizing *Despain*). The long and short of it is that showing good cause under Fed. R. Civ. P. 4(m) is a "high hurdle." *Murphy v. City of Tulsa*, 556 Fed. Appx. 664, 668 (10th Cir. 2014) (unpublished).

With the foregoing standards in mind, the Court turns to the Debtor's position. The Debtor's good faith argument is that she "[1] made good-faith efforts at service and [2] the defendant had actual notice" and that she "[3] acted diligently, [4] followed DOJ directions, and [5] Liberty Mutual suffered no prejudice."[17] The Court considers each of these cursory assertions (in a slightly different order).

Factually, there is no basis for the Debtor's argument that she "followed DOJ directions." In fact, elsewhere in the Response, the Debtor confessed that: (1) "the DOJ letter merely enclosed the bond but **provided no explanation, procedural instruction, or direction** as to how a beneficiary or injured party was to execute a claim or give notice to the surety" and "[b]ecause the DOJ's correspondence was entirely silent as to process . . . Movant [Debtor] acted on her own initiative."[18] (Emphasis in original.) And the letter to which the Debtor refers, Exhibit A, plainly contains no directions from the United States Department of Justice to the Debtor on how to serve legal process in this Adversary Proceeding or any other. Indeed, the letter is dated January 10, 2024, which is about seven months before the Debtor even commenced this Adversary Proceeding. So, the Debtor cannot claim to have followed directions provided by the United States Department of Justice nor otherwise blame the Department for her failure to effect proper service of the Complaint and Summons on Liberty Mutual.

---

[17] Docket No. 106 at 11.
[18] *Id*. at 7.

With respect to alleged actual notice, binding appellate precedent dictates that "actual notice is not equivalent to a showing of good cause for purposes of Rule 4[m]."[19] *Despain*, 13 F.3d at 1439. Put another way:

> The relevant standard under Rule 4[m] is not whether defendants do or do not have 'actual knowledge' of a suit in which they are named. The standard is whether plaintiffs have shown 'good cause' for their failure [to properly serve a defendant or defendants].

*Id*. (quoting *Eggink v. City of N.Y. Human Res. Admin.*, 126 F.R.D. 32, 33 (S.D.N.Y. 1989)). Therefore, even assuming that the Debtor's pre-suit correspondence with Liberty Mutual could be construed as providing actual notice to Liberty Mutual of a not-yet-filed lawsuit, the Debtor's actual notice argument fails.

The Debtor's plea to alleged lack of prejudice also fails. Per the Tenth Circuit "[t]he absence of prejudice to the defendants, by itself, does not equate to good cause on the part of the plaintiffs." *Despain,* 13 F.3d at 1439. *See also Murphy*, 556 Fed. Appx. 668 ("We [the Tenth Circuit] . . . have deemed irrelevant the fact that no prejudice inured to the defendants" in construing good cause under Fed. R. Civ. P. 4(m)). And, besides, the Debtor has done nothing than assert lack of prejudice in a conclusory fashion with no explanation.).

That leaves the Debtor only with the duplicative arguments that she "made good-faith efforts at service" and "acted diligently." The Court disagrees. The Debtor made no efforts at service on Liberty Mutual during the first three weeks after she filed the Adversary Proceeding, thereby prompting the Court to issue an "Order to Show Cause" why the Adversary Proceeding should not be dismissed for failure to serve process and prosecute the Adversary Proceeding.[20] Then, the Debtor attempted service of process on Liberty Mutual; but improperly. She apparently sent a Summons and the Amended Complaint in September 2024 in a package addressed to:

Nina M. Durante
Claims
1001 4th ave.
Seattle, WA 98154

The address did not identify Liberty Mutual and the text of the address does not show that it was to "an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service." The capacity of "Nina M. Durante" is listed

---

[19] The *Despain* decision involved Fed. R. Civ. P. 4(j). However, Fed. R. Civ. P. 4(j) was "amended and recodified in 1993 and is now Fed. R. Civ. P. 4(m)." *Espinoza*, 52 F.3d at 840. The Tenth Circuit has confirmed that "this court's cases that interpret Rule 4(j) remain unaffected insofar as they provide guidance in determining good cause has been shown [under Fed. R. Civ. P. 4(m)]." *Id*. at 841. Accordingly, in this Order, whenever a judicial decision refers to "Fed. R. Civ. P. 4(j)", the Court uses a bracket to note the new rule as "Fed. R. Civ. P. 4[m]."
[20] Docket No. 3.

vaguely as "Claims."  Later, the Debtor asserted that Nina M. Durante is a "claims representative" of Liberty Mutual.  However, the Debtor did not provide any factual or legal basis to show that Nina M. Durante was, at the time of the alleged service, "an officer, a managing or general agent, or an agent authorized by appointment or by law to receive service . . . ." for Liberty Mutual.  Furthermore, when she filed a "Notice of Service" in the Adversary Proceeding, she stated that "The Summons and Complaint in this adversary proceeding have been served on the Trustee and Mr. Miller via certified mail."[21]  The Debtor did not reference Liberty Mutual at all.  And, the Debtor failed to attempt to effect proper service on Liberty Mutual even after the Court raised the issue in the Order to Show Cause.[22]

So, the Debtor made one ineffective service attempt.  She did not follow the requirements for service in Fed. R. Bankr. P. 7004(b)(3).  But, the Debtor's failure to comply with the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure does not constitute good cause.  She did not adequately explain the reason why she did not serve process properly on Liberty Mutual.  The Court surmises that the Debtor did not pay close attention to the service of process requirements.  However, negligent failure to comply with rules of procedure or misinterpretation of rules of procedure does not constitute good cause.  *See Kirkland*, 86 F.3d at 176 ("Mistake of counsel or ignorance of the rules also usually do not suffice.").  *See also Despain*, 13 F.3d 1436.  The Court acknowledges that the Debtor is proceeding in this Adversary Proceeding *pro se*.  However, given her extensive history of engagement in the bankruptcy process, she has at least some knowledge of the Bankruptcy Code, the Federal Rules of Civil Procedure, and the Federal Rules of Bankruptcy Procedure.  And, in any event, "[p]ro se litigants must follow the requirements of Rule 4[m]." *Kirkland*, 86 F.3d at 176.  *See also DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993) ("A pro se litigant is still obligated to follow the requirements of Fed. R. Civ. P. 4."); *Goodwin v. Hatch*, 2018 WL 4368888, at *1 (D. Colo. Jul. 9, 2018) ("Although Plaintiff is proceeding pro se, it remains his sole obligation to timely serve any defendants.").

In any event, after the Debtor's sole ineffective service of process attempt on Liberty Mutual in September 2024, the Debtor did not proceed diligently.  When Liberty Mutual did not answer or otherwise respond to the Amended Complaint after the improper service, the Debtor was on notice that there might have been a service problem.  She could have attempted to serve Liberty Mutual properly.  Or, at very least, she should have filed a motion for entry of default which would have raised the propriety of service front and center.  But she did neither.  The Court was forced to issue another "Order to Show Cause" (dated July 21, 2025) requiring the Debtor either to take action to prosecute her claims against Liberty Mutual or to show cause why her claims against Liberty Mutual should not be dismissed for failure to prosecute.[23]  Even then, the Debtor did not take steps to serve Liberty Mutual in accordance with Rule 7004(b)(3).  Instead, she submitted a response arguing that the default should enter against Liberty Mutual

---

[21]  Docket No. 7.
[22]  Docket No. 75 at 3 n.4.
[23]  Docket No. 75.

pursuant to Fed. R. Civ. P. 55, thereby raising the service issue.[24] None of that demonstrates the Debtor's diligence — instead, quite to the contrary.

An extension of time to effect proper service of process for good cause under Fed. R. Civ. P. 4(m) requires that the movant demonstrate "meticulous efforts to comply" with the applicable service requirements. *Kirkland*, 86 F.3d at 176; *Despain*, 13 F.2d at 1438. The Debtor did not show such meticulous efforts. Accordingly, the Court finds that the Debtor did not meet her burden to show good cause for an extension of time pursuant to Fed. R. Civ. P. 4(m).

### 2. A Permissive Extension of Time to Effect Proper Service Is Unwarranted.

Although the Debtor did not meet her burden to show good cause, that is not the end of the Fed. R. Civ. P. 4(m) inquiry. Even in the absence of good cause, the Court still must consider whether to grant a permissive extension of time. *Espinoza*, 52 F.3d at 841-42 ("[U]nder the new rule [Fed. R. Civ. P. 4(m)] a plaintiff who has failed to show 'good cause' for a mandatory extension of time may still be granted a permissible extension of time within the district court's discretion.").

The Tenth Circuit has noted a few factors which should guide the Court in considering a permissive extension of time: (1) whether the applicable statute of limitations would bar the refiled action; (2) policy considerations regarding service of process on the United States given the "complex nature of the requirements of Fed. R. Civ. P. 4(i)." *Espinoza*, 52 F.3d at 842. In the Response, the Debtor identified the two *Espinoza* factors; but did not present any argument about them. In any event, courts have listed some other possibly relevant factors including *pro se* status, the danger of prejudice, and the length of delay. *Elide Fire*, 2022 WL 672485, at *5.

The Debtor "makes no argument as to why a permissive extension is warranted." *Id.* And, "[i]t is not the Court's duty to make arguments or perform legal research for the Plaintiff." *Id.* Nevertheless, the Court does its best to evaluate permissive extension.

The factor which seems to be emphasized most in the case law construing Fed. R. Civ. P. 4(m) is the statute of limitations factor: particularly, whether the applicable statute of limitations would bar refiling the action if the case were dismissed. The Debtor has not identified the statute of limitations applicable to her claims against Liberty Mutual, and the statute of limitations is not ascertainable from the pleadings. Indeed, the only reference to a claim against Liberty Mutual in the Amended Complaint is the statement: "This is an adversary proceeding brought pursuant to Fed. R. Bankr. P. 7001 to recover damages against the Trustee's bond provided by Liberty Mutual Insurance for misconduct and mismanagement by the Trustee, Jeanne Y. Jagow."[25] The Amended Complaint does not include any specific claims targeting Liberty Mutual nor does it identify an accrual date for such claims. And, the Debtor did not raise the

---

[24] Docket No. 79.
[25] Docket No. 2 at 1.

13

statute of limitations as a reason for a permissive extension of time.  Accordingly, the Debtor has forfeited the argument.  *Shepard v. U.S. Dep't of Veterans Affairs*, 819 Fed. Appx. 622, 624 (10th Cir. 2020) (unpublished) ("On appeal, Ms. Shepard contends that her claims are now time-barred.  But Ms. Shepard didn't argue [under Fed. R. Civ. P. 4(m)] that the claims would be time-barred, forfeiting the argument.").

With respect to the second factor identified in *Espinoza* (policy considerations regarding service of process on the United States given the "complex nature of the requirements of Fed. R. Civ. P. 4(i)), that factor is inapplicable because the Debtor has not tried to serve the United States or its agencies, corporations, officers, or employees under Fed. R. Civ. P. 4(i).  As noted in *Espinoza*, the interaction between Fed. R. Civ. P. 4(i) and (m) might be confusing.  But there is nothing particularly complex or difficult about serving Liberty Mutual.  All the Debtor needed to do was follow the simple dictates of Fed. R. Bankr. P. 7004(b)(3).  But she did not.

With respect to other permissive extension factors, the Court recognizes that the Debtor is proceeding without legal counsel.  The Debtor's *pro se* status is a factor that the Court weighs slightly in favor of a permissive extension, but even as a *pro se* plaintiff, the Debtor is obligated (like all other litigants) to comply with the applicable procedural rules.  *DiCesare*, 12 F.3d at 980; *Goodwin*, 2018 WL 4368888, at *1.  Despite the fact that, through years of litigation, the Debtor has demonstrated general familiarity with the Bankruptcy Code, the Federal Rules of Civil Procedure, and the Federal Rules of Bankruptcy Procedure, she did not comply with the applicable rules.  So, the Court weighs this factor only slightly in her favor.  The Court also finds that delay cautions against a permissive extension of time.  As set forth above, the Debtor was not diligent in prosecuting claims against Liberty Mutual.  And, the Debtor has not demonstrated a lack of prejudice to Liberty Mutual.

The foregoing brings the Court to a final consideration which is important in the special circumstances of this case: whether the Debtor has stated any plausible claims for relief against Liberty Mutual.  *Sullivan v. Univ. of Kan. Hosp. Author.*, 884 Fed. Appx 43, 53 (10th Cir. 2021) (unpublished) (affirming denial of permissive extension of time where district court concluded that a permissive extension of time "was unwarranted because Mr. Sullivan failed to state any plausible claims for relief.").  Based on the Amended Complaint coupled with the Response, the Court cannot ascertain why the Debtor is even suing Liberty Mutual.

The Amended Complaint refers to a "Trustee's Bond," but provided no additional information.  However, in the Response, the Debtor has identified the specific bond upon which she apparently believes relief is available:  Bond No 612419153.  Under the heading "Issuance of Trustee Bond," the Debtor stated the following in the Response:

> The Executive Office for the United States Trustees issued a blanket Chapter 7 trustee bond through United States Fire Insurance Company ("USFIC"), a Delaware corporation with its principal office at 305 Madison Avenue, Morristown, New Jersey 07960.  The bond, numbered **612419153 (EXH. F),**

14

> covers trustees within Region 19, including **Jeanne Y. Jagow.**" [26]

Throughout the Response, the Debtor made clear that she is suing Liberty Mutual on Bond No. 612419153.[27] And, then, the Debtor attached Bond No. 612419153 to the Response as Exhibit F. But, as the Debtor herself recognized when describing Bond No. 612419153, it was not issued by Liberty Mutual. It was issued by United States Fire Insurance Company. Throughout this Adversary Proceeding, the Debtor has not presented anything at all linking Liberty Mutual with Bond No. 612419153. As a result, the Court remains at a complete loss as to why the Debtor has even named Liberty Mutual as a defendant based on Bond No. 612419153. Given the foregoing, a permissive extension of time to serve Liberty Mutual appears somewhat pointless.

Having considered the issues and the totality of the circumstances, the Court determines that permissive extension of time for the Debtor to serve Liberty Mutual is unwarranted.

### C. The Court Dismisses Liberty Mutual Without Prejudice.

The Debtor has not properly served Liberty Mutual with the Summons and Amended Complaint. Accordingly, the Court does not have personal jurisdiction over Liberty Mutual. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017) ("[A]bsent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction."). Fed. R. Civ. P. 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Since the Debtor has not shown good cause for the ineffective service of process and permissive extension of time is unwarranted, the Court is obligated to dismiss all claims against Liberty Mutual without prejudice; and hereby does so.

### D. The Court Denies Various Other Pending Motions.

Subsequent to the Default Order and the Debtor's Response, the Debtor and/or the Trustee filed the following motions (which are highlighted in bold) and related documents pertaining to service of process on Liberty Mutual:

---

[26] Docket No. 109 at 6 (emphasis in original).
[27] *See, e.g., id.* at 1, 5, and 6.

15

1. On November 7, 2025, the Debtor filed a "Motion for Entry of Default Under Fed. R. Civ. P. 55(a) and Fed. R. Bankr. P. 7055"[28] and another "Motion for Entry of Default Under Fed. R. Civ. P. 55(a) and Fed. R. Bankr. P. 7055"[29] (together, the "**New Default Motions**").  The two New Default Motions are identical.

2. On November 24, 2025, the Trustee filed "Jeanne Y. Jagow's Response to Motion for Entry of Default Under Fed. R. Civ. P. 55(a) and Fed. R. Bankr. P. 7055" (the "Trustee's Response to Motions for Entry of Default") which appears to respond to the New Default Motions.[30]

3. On November 25, 2025, the Debtor filed "Plaintiff's Response to Trustee's Unauthorized Response (Doc. 114), Request to Strike, Renewed Motion for Sanctions, and Request for Immediate Entry of Default and Default Judgment Pursuant to Fed. R. 55(a)-(b) and Fed. R. Bankr. P. 7055" (the "**Response and Motion to Strike, Enter Sanctions, and Enter Default and Enter Default Judgment**").[31]

4. On December 11, 2025, the Trustee filed "Jeanne Y. Jagow's Reply to Plaintiff's Response to Trustee's Unauthorized Response (Doc. 114), Request to Strike, Renewed Motion for Sanctions, and Request for Immediate Entry of Default and Default Judgment Pursuant to Fed. R. 55(a)-(b) and Fed. R. Bankr. P. 7055."[32]

5. On December 12, 2025, the Debtor filed "Plaintiff's Motion Requesting Hearing and Oral Argument" (the "**Motion for Hearing**").[33]

6. On December 12, 2025, the Debtor filed "Plaintiff's Motion to Require Action on Default and Service, Response to Trustee's Reply (Doc. 116), Renewed Request for Entry of Default or, in Alternative, a Definitive Ruling, and Preservation of Appellate Issues" (the "**Motion for Ruling**").[34]

7. On December 18, 2025, the Trustee filed a "Declaration of Gerald N. Carozza Jr. in Support of Jeanne Y Jagow's Reply to Plaintiff's Response to Trustee's Unauthorized Response (Doc. 114), Request to Strike, Renewed Motion for Sanctions, and Request for Immediate Entry of Default and Default Judgment Pursuant to Fed. R. 55(a)-(b) and Fed. R. Bankr. P. 7055."[35]

8. On December 19, 2025, the Debtor filed "Movant's Targeted Motion to Strike, Non-Party Filings, Standing Objection (for Preservation), and Request for Clarifying Order Requiring Authorized Intervention of Cessation of Filings" (the "**Targeted Motion**").[36]

---

[28] Docket No. 110.
[29] Docket No. 112.
[30] Docket No. 114.
[31] Docket No. 115.
[32] Docket No. 116.
[33] Docket No. 117.
[34] Docket No. 118.
[35] Docket No. 119.
[36] Docket No. 120.

      9.    On December 26, 2025, the Debtor filed a blank "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in Civil Action" (the "Subpoena").[37]

      It is a lot — and a lot of duplication, none of which serves to speed the Court's adjudication of the issue. However, the Court ascertains that there are five pending motions (plus numerous subparts): (1) the New Default Motions; (2) the Response and Motion to Strike, Enter Sanctions, and Enter Default and Enter Default Judgment; (3) the Motion for Hearing; (4) the Motion for Ruling; and (5) the Targeted Motion.

      The Court denies the New Default Motions. These motions ask for the same relief that the Court already rejected in the Default Order. They are improper and duplicative. The Court rejects the New Default Motions on the basis of the Default Order, this Order, and the Debtor's ineffective service on Liberty Mutual. The Court also denies the New Default Motions as moot because the Court has dismissed Liberty Mutual as a defendant.

      The Court denies the Response and Motion to Strike, Enter Sanctions, and Enter Default and Enter Default Judgment, which ask for several kinds of relief. With respect to requesting that the Court enter default and default judgment against Liberty Mutual, the Court rejects such requests (which are purely duplicative) again for the same reasons on the basis of the Default Order, this Order, and the Debtor's improper service on Liberty Mutual. The Court denies the other requested relief as unsupported and unwarranted. The Court did not consider the Trustee's Response to Motions for Entry of Default [38] which seems to be the Debtor's main concern. And, finally, the Court denies all the various requests for relief as moot because the Court has dismissed Liberty Mutual as a defendant.

      The Court denies the Motion for Hearing. The Court has received a wealth of written materials from the Debtor and provided her with due process. She has been heard. Conducting a hearing would not aid the Court in adjudication of any pending issues. The Court also denies the Motion for Hearing as moot because the Court has dismissed Liberty Mutual as a defendant.

      The Court denies the Motion for Ruling which was a wholly unnecessary submission by the Debtor. Through the Motion for Ruling, the Debtor asked again, for perhaps the fifth time, for the entry of default and default judgment against Liberty Mutual. The Court rejects such requests (which are purely duplicative) again for the same reasons on the basis of the Default Order, this Order, and the Debtor's improper service on Liberty Mutual. The Court has ruled on all pending motions in this Adversary proceeding in due course. The Court also denies the Motion for Ruling as moot because the Court has dismissed Liberty Mutual as a defendant.

---

[37]     Docket No. 121.
[38]     Docket No. 114.

The Court denies the Targeted Motion as duplicative and unnecessary. The Court did not consider the Trustee's "Trustee's Response to Motions for Entry of Default".[39] The Court also denies the Targeted Motion as moot because the Court has dismissed Liberty Mutual as a defendant. There is no longer any need for the Court adjudicate the Trustee's standing with respect to service of process on Liberty Mutual.

With respect to the Subpoena, the Court directs the Clerk of the Bankruptcy Court not to execute or issue the Subpoena because the Court already has dismissed Liberty Mutual as a defendant.

V. **Conclusion and Order.**

For the reasons set forth above, the Court

RECONFIRMS its prior DENIAL of entry of default and entry of default judgment against Liberty Mutual as set forth in the Default Order;

DENIES the Debtor an extension of time to properly serve Liberty Mutual under Fed. R. Civ. P. 4(m);

DISMISSES all claims against Liberty Mutual in this Adversary Proceeding without prejudice; and

DENIES all other relief requested by the Debtor in various motions identified in this Order.

Based upon the foregoing and the Court's prior dismissal of all other defendants, the Court will enter Judgment dismissing this Adversary Proceeding.

DATED this 5th day of January, 2026.

BY THE COURT:

_Thomas B. McNamara_
Thomas B. McNamara
United States Bankruptcy Judge

---

[39] Docket No. 114.